```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

FOLASHADE OLOGUNDUDU,                    1:15-cv-04021-NLH-AMD

       Plaintiff,              **OPINION**

   v.

MANORCARE HEALTH SERVICES,
INC.,

       Defendant.

**APPEARANCES**:

DRAKE P. BEARDEN, JR.
KEVIN M. COSTELLO
COSTELLO & MAINS, P.C.
18000 HORIZON WAY
SUITE 800
MOUNT LAUREL, NJ 08054
    On behalf of Plaintiff

RACHEL ANNE SEATON
WILLIAM P. MCLANE
LITTLER MENDELSON PC
ONE NEWARK CENTER
8TH FLOOR
NEWARK, NJ 07102
    On behalf of Defendants

**HILLMAN, District Judge**

    Presently before the Court is the motion of Defendant for summary judgment in its favor on Plaintiff's claims that Defendant violated the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, et seq., by discriminating and retaliating against her because she was pregnant. For the

reasons expressed below, Defendant's motion will be denied.

## BACKGROUND

Plaintiff, Folashade Ologundudu, began working at Defendant, Manor Care Health Services, Inc., as a Licensed Practical Nurse ("LPN") supervisor on March 5, 2014. Work shifts at Defendant are 7:00 a.m. to 7:00 p.m. and 7:00 p.m. to 7:00 a.m. On November 5, 2014, Plaintiff was working the night shift when at around 4:30 a.m. she took the half-hour break afforded to night shift employees. After assisting a patient, Plaintiff sat down in a chair in the lounge that is closest to the nurses' station.

Even though the lounge is considered to be a lounge for patients and their families, and employees have a lounge solely for their use, Plaintiff claims that nurses often take their night shift breaks in the patient lounge, which the assistant director of nursing, Tameka Wall, calls the "nursing lounge," because of its close proximity to the nurses' station.

While Plaintiff was on break, Wall, along with nurse manager Tawana Wisdom, came to the facility to hold a meeting. Wall asked about Plaintiff and was directed to the lounge where she observed Plaintiff sitting with her head in her hands and eyes closed. Wall accused Plaintiff of sleeping, but Plaintiff denied that she was sleeping. Plaintiff told Wall she was resting because she was nauseous and fatigued. According to

2

Defendant, employees are permitted to sleep during their break, but they are not permitted to do so in the patient lounge, even though there is no written rule that employees are not permitted to use the patient lounge for their breaks. Plaintiff then accompanied Wall back to the nurses' station for the remainder of the planned meeting.

After the meeting, Plaintiff returned to her job duties. Wall called the director of nursing, who told Wall to obtain a statement from Plaintiff and to advise her she was suspended. Wall tried to contact the facility administrator, but she could not reach him. Wall also called the human resources director, Angela Hood, and told Hood that she found Plaintiff sleeping in the patient lounge and that she had notified the director of nursing.

A few minutes later, Wall, who was with Wisdom, summoned Plaintiff to her office. Wall told Plaintiff that she was suspended for sleeping in the patient lounge. Plaintiff claims that she again denied that she was sleeping, and told Wall and Wisdom that she was feeling nauseous because she was pregnant. Hood called Plaintiff later that day on November 6, 2014, and told Plaintiff that someone would contact her about her employment.

Eleven days later, on November 17, 2014, Plaintiff met with Hood, who presented Plaintiff with a termination letter. The

basis for her termination was that Plaintiff violated work rule commitment A-4, which requires employees to stay awake on the job. Plaintiff refused to sign the termination letter because she was not sleeping, and was instead resting because she was nauseous and fatigued.

Plaintiff claims that her termination violates the New Jersey Law Against Discrimination, N.J.S.A. 10:5-12(s), which prohibits an employer from discriminating against a pregnant employee and requires that the employer provide reasonable accommodations to a pregnant employee. Plaintiff claims are three-fold: 1) Defendant terminated her because she was pregnant; 2) Defendant retaliated against her for her pregnancy and accommodation requests; and 3) Defendant failed to provide her reasonable accommodations for her pregnancy.

Defendant has moved for summary judgment on all of Plaintiff's claims. Defendant argues that the decision to suspend Plaintiff was made before Plaintiff informed Wall that she was pregnant, and that Plaintiff's pregnancy, which is not considered a disability under these circumstances, is an after-the-fact attempt to excuse her violation of work rule commitment A-4. Plaintiff has opposed Defendant's motion.

## DISCUSSION

### A. Subject matter jurisdiction

Defendant removed this action from New Jersey state court

4

to this Court pursuant to 28 U.S.C. § 1441. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. Plaintiff is a citizen of New Jersey, and Defendant is a citizen of Delaware and Ohio. (See Docket No. 41.)

**B.   Standard for Summary Judgment**

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(a).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and

5

all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004)(quoting Anderson, 477 U.S. at 255).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).

**C. Analysis**

Effective January 17, 2014, the New Jersey Legislature modified the NJLAD to incorporate "pregnancy" as a protected characteristic. Roopchand v. Complete Care, 2017 WL 3297466, at *4 (N.J. Super. Ct. App. Div. August 3, 2017) (citing N.J.S.A. 10:5-12(s); N.J.S.A. 10:5-3.1(b), the Pregnant Workers Fairness Act (PWFA)). The Legislature also required employers to make reasonable accommodations to a pregnant employee and noted its

6

intention:

> [a. That pregnant women are vulnerable to discrimination in the workplace in New Jersey, as indicated in reports that women who request an accommodation that will allow them to maintain a healthy pregnancy, or who need a reasonable accommodation while recovering from childbirth, are being removed from their positions, placed on unpaid leave, or fired;
>
> b. It is the intent of the Legislature] to combat this form of discrimination by requiring employers to provide reasonable accommodations to pregnant women and those who suffer medical conditions related to pregnancy and childbirth, such as bathroom breaks, breaks for increased water intake, periodic rest, assistance with manual labor, job restructuring or modified work schedules, and temporary transfers to less strenuous or hazardous work.

Id. (quoting N.J.S.A. 10:5-3.1(b)).[1]

Accordingly, the NJLAD provides:

> It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination: . . . For an employer to treat, for employment-related purposes, a woman employee that the employer knows, or should know, is affected by pregnancy in a manner less favorable than the treatment of other persons not affected by pregnancy but similar in their ability or inability to work. In addition, an employer of an employee who is a woman affected by pregnancy shall make available to the employee reasonable accommodation in the workplace, such as bathroom breaks, breaks for increased water intake, periodic rest, assistance with manual labor, job restructuring or modified work schedules, and temporary transfers to less strenuous or hazardous work, for needs related to the pregnancy when the employee, based on the advice of her physician, requests the accommodation, unless the employer can demonstrate that providing the accommodation would be an undue hardship on the business operations of the employer. The employer shall not in any way penalize the employee in terms, conditions or privileges of employment for

---

[1] "Prior to enactment of this law, the LAD was interpreted to prohibit discrimination against pregnant employees as gender discrimination." Roopchand, 2017 WL 3297466, at *4 n.2.

7

> requesting or using the accommodation. Workplace accommodation provided pursuant to this subsection and paid or unpaid leave provided to an employee affected by pregnancy shall not be provided in a manner less favorable than accommodations or leave provided to other employees not affected by pregnancy but similar in their ability or inability to work. This subsection shall not be construed as otherwise increasing or decreasing any employee's rights under law to paid or unpaid leave in connection with pregnancy.

N.J.S.A. 10:5-12(s).

A plaintiff can prove her discrimination claims through direct or circumstantial evidence. To prove discrimination under the NJLAD through circumstantial evidence, "New Jersey has adopted the 'procedural burden-shifting methodology articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).'" Tisby v. Camden County Correctional Facility, 152 A.3d 975, 980 (N.J. Super. Ct. App. Div. 2017) (quoting Zive v. Stanley Roberts, Inc., 867 A.2d 1133 (2005)). Under the framework of McDonnell Douglas, the plaintiff must first establish a *prima facie* case of discrimination, which creates an inference of unlawful discrimination. Willis v. UPMC Children's Hosp. of Pittsburgh, 808 F.3d 638, 643–45 (3d Cir. 2015). Once the plaintiff has successfully established a prima facie case creating an inference of discrimination, the burden shifts to the employer who must articulate a legitimate nondiscriminatory reason for the adverse employment action. Id. (citations omitted). This second step of McDonnell Douglas does not

require that the employer prove that the articulated legitimate, nondiscriminatory reason was the actual reason for the adverse employment action, but instead the employer must provide evidence that will allow the factfinder to determine that the decision was made for nondiscriminatory reasons. <u>Id.</u> (citations omitted).

If the employer satisfies this second step, the burden shifts back once more to the plaintiff to show, by a preponderance of the evidence, that the employer's proffered legitimate, nondiscriminatory reason was pretextual – that not only was the employer's proffered reason false, but the real reason was impermissible discrimination. <u>Id.</u> This can be done in two ways: (1) by pointing to evidence that would allow a factfinder to disbelieve the employer's reason for the adverse employment action by showing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons, or (2) by pointing to evidence that would allow a factfinder to believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action, which can be shown by (1) the defendant having previously discriminated against the plaintiff; (2) the defendant having discriminated against others within the plaintiff's protected class; or (3) the defendant has treated similarly situated,

substantially younger individuals more favorably.  Id. (citations and quotations omitted).

In contrast to circumstantial evidence, direct evidence of discrimination is so revealing of discriminatory animus that it is unnecessary to rely on the McDonnell Douglas burden-shifting framework.  Anderson v. Wachovia Mortgage Corp., 621 F.3d 261, 269 (3d Cir. 2010).  Once a plaintiff produces such evidence, the defendant has the burden of producing evidence to show that it would have made the same decision in the absence of discriminatory animus.  Id. (citation omitted).  To qualify as direct evidence, the evidence must be such that it demonstrates that the decision-makers placed substantial negative reliance on an illegitimate criterion in reaching their decision.  Id.

Direct evidence must satisfy two requirements: (1) the evidence must be strong enough to permit the factfinder to infer that a discriminatory attitude was more likely than not a motivating factor in the defendant's decision; and (2) the evidence must be connected to the decision being challenged by the plaintiff.  Id. (citations omitted).  Moreover, any statements made by a defendant's employees must be made at a time proximate to the challenged decision and by a person closely linked to that decision.  Id. (citation omitted).  These requirements are a high hurdle for plaintiffs.  Id. (citation omitted).

As we have noted, Plaintiff has asserted three claims for how Defendants' alleged actions violated the NJLAD: (1) Unlawful termination based on a discriminatory factor, (2) failure to accommodate her protected condition, and (3) retaliation for her revealing her protected condition, through termination and the failure to accommodate. The Court will address each claim in turn.

**1.  Unlawful termination**

Under the NJLAD, the general standard for termination cases requires the plaintiff to show:

> (1) she was in the protected group; (2) she was performing her job at a level that met her employer's legitimate expectations; (3) she was nevertheless fired; and (4) she was terminated under circumstances that give rise to an inference of unlawful discrimination.

Roopchand, 2017 WL 3297466, at *5 (citations omitted) (applying this standard in a case where the plaintiff alleged that she was terminated because of her pregnancy in violation of N.J.S.A. 10:5-12(s)).

Defendant argues that Plaintiff cannot prove her termination was due to her pregnancy because the decision to suspend her was made prior to learning of her pregnancy, and it was for a legitimate violation of Defendant's work rule. The Court does not agree.

As set forth above, a plaintiff may prove her prima facie case of unlawful termination through direct or circumstantial

11

evidence. Here, Plaintiff has presented direct evidence that a discriminatory attitude was more likely than not a motivating factor in Defendant's decision to terminate Plaintiff, and that the manifestation of Plaintiff's pregnancy was the direct cause of her termination.

Specifically, (1) Plaintiff states that other nurses used the patient lounge for breaks during the night shift, and she did not know she was not permitted to do so; (2) Plaintiff maintains that she was resting and not sleeping; (3) Plaintiff maintains that she told Wall and Wisdom she was pregnant; (4) even if Plaintiff told Wall and Wisdom she was pregnant after Wall spoke with the director of nursing and after Wall told Plaintiff she was suspended, that information was conveyed at the first opportunity Plaintiff had to speak with Wall that same evening; (5) Plaintiff's termination decision came 11 days later, well after Wall and Wisdom knew about Plaintiff's pregnancy;[2] (6) there was no rule prohibiting employees from

---

[2] Plaintiff has presented evidence that certain decision makers claim that they were not aware that Plaintiff was pregnant, and that if they knew, they would not have approved of her termination. The import of why Defendant's human resources supervisors were not informed about Plaintiff's pregnancy, when it is admitted that Wall and Wisdom learned of Plaintiff's pregnancy on the day of the alleged sleeping incident, is for a jury to determine. Defendant, however, cannot escape liability for unlawful termination on that basis alone when Plaintiff's supervisors were aware of her protected condition. See N.J.S.A. 10:5-12a, 10:5-5e (prohibiting unlawful employment practices or unlawful discrimination only by "an employer," and an individual

12

using the patient lounge; and (7) employees are allowed to sleep during their breaks.

Succinctly stated, there is no dispute Plaintiff was terminated for conduct – resting or sleeping in a chair during her break - that plaintiff alleges was directly caused by her pregnancy, a condition Defendant learned of, if not prior to her suspension, prior to her termination.  This direct evidence of termination based on a protected status – pregnancy – establishes Plaintiff's prima facie case, and shifts the burden to Defendant to produce evidence showing that it would have made the same decision in the absence of Plaintiff's pregnancy. See Anderson, 621 F.3d at 269 (citations omitted) (explaining that direct evidence of discrimination makes it unnecessary to rely on the McDonnell Douglas burden-shifting framework, under which

---

supervisor is not defined as an "employer" under the NJLAD); Fountain v. Covenant Security Services, Ltd., 2017 WL 434009, at *6 (D.N.J. 2017) ("A business entity acts through its employees, and the NJLAD provides that 'employers' are liable for acts of employment discrimination.") (citing N.J.S.A. 10:5-12(a); Cicchetti v. Morris County Sheriff's Office, 947 A.2d 626, 643 (N.J. 2008) (explaining that if a supervisor acted within the scope of his or her authority in circumstances in which the employer had delegated that authority, and if the NJLAD violation was aided by that grant of authority, the employer would be vicariously liable); Staub v. Proctor Hosp., 562 U.S. 411, 415 n.1 (2011) (citation omitted) (explaining that in a "cat's paw" case, a plaintiff seeks "to hold his employer liable for the animus of a supervisor who was not charged with making the ultimate employment decision")).

13

the burden of proof remains with the plaintiff, and once a plaintiff produces such evidence, the defendant has the burden of producing evidence to show that it would have made the same decision in the absence of discriminatory animus). A jury must resolve this issue.[3]

### 2. Failure to accommodate / retaliation

A failure to accommodate claim typically arises for claims of disability discrimination. In that context, in order to establish a prima facie case of failure to accommodate under the NJLAD, a plaintiff is required to demonstrate: that "(1) [s]he is a disabled person within the meaning of the ADA [or NJLAD];[4] (2) [s]he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations

---

[3] To be clear, this Court would also deny summary judgment if Plaintiff's proofs were more fairly characterized as circumstantial and the McDonnell Douglas burden-shifting framework applied instead. Plaintiff as met her relatively low burden of demonstrating a prima facie case, her employer has offered a non-discriminatory reason of her discharge, and there is more than enough evidence in the record, if believed by a jury, to prove that reason was a pretext in the sense it failed to appreciate or address that Plaintiff's apparent need to rest was caused by her pregnancy.

[4] "[A] normal pregnancy, absent complications, does not constitute a disability under the NJLAD." Larsen v. Township of Branchburg, 2007 WL 135706, at *3 (N.J. Super. Ct. App. Div. 2007). Thus, relevant to Plaintiff's case here, where Plaintiff does not contend that her pregnancy constituted a disability, the focus of the first prong of a prima facie case for an employer's failure to accommodate a normal pregnancy derives from the NJLAD itself: i.e., "an employee who is a woman affected by pregnancy." N.J.S.A. 10:5-12(s).

14

by the employer; and (3) [s]he has suffered an otherwise adverse employment decision as a result of discrimination." Stith v. New Jersey Turnpike Authority, 2017 WL 1095035, at *3 (D.N.J. March 21, 2017) (quoting Gaul v. Lucent Techs., Inc., 134 F.3d 576, 580 (3d Cir. 1998)) (other citation omitted). A plaintiff must also show "that an employer failed to participate in the interactive process" by showing that: (1) the employer knew about the employee's disability; (2) the employee requested accommodations or assistance for her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and (4) the employee could have been accommodated but for the employer's lack of good faith." Id. (citing McQuillan v. Petco Animal Supplies Stores, Inc., 2014 WL 1669962, at *6 (D.N.J. Apr. 28, 2014) ("[T]he requirements for a failure to accommodate claim under the NJLAD have been interpreted in accordance with its federal counterpart . . . .")) (other citations omitted).

To establish a prima facie case of discriminatory retaliation, a plaintiff must demonstrate that: (1) she engaged in a protected activity known by the employer; (2) thereafter her employer unlawfully retaliated against her; and (3) her participation in the protected activity caused the retaliation. Craig v. Suburban Cablevision, Inc., 660 A.2d 505, 508 (N.J. 1995) (citation omitted).

Defendant argues that Plaintiff cannot prove her failure to accommodate claim, and her related retaliation claim, because she never asked for accommodations prior to her termination. Plaintiff, on the other hand, argues that she has readily established her prima facie case for failure to accommodate and retaliation, and that numerous disputed facts require her claims to go to a jury. These disputed facts include her contention that she was not sleeping and that she told Wall and Wisdom that the reason she was resting was because she was pregnant and needed periods of rest due to her nausea and fatigue.

Plaintiff also disputes Defendant's assertion that her termination eliminated its obligation to engage in the interactive process. Plaintiff argues that because once Defendant learned about her pregnancy and her need for rest breaks due to fatigue and nausea, even if Defendant became aware of this need after her suspension, Defendant was required to comply with N.J.S.A. 10:5-12(s). Plaintiff further argues that often an employee cannot ask for an accommodation until the employee's condition manifests that need.[5]

---

[5] In further support of its position that it did not violate the NJLAD when it terminated Plaintiff, Defendant argues that N.J.S.A. 10:5-12(s) does not obligate an employer to provide accommodations to a pregnant employee unless such accommodations are required by her doctor. This Court recognizes the language of N.J.S.A. 10:5-12(s) could be read that way but holds that 10:5-12(s) must be read not only in the context of the remedial purposes of the statute as a whole but also *in pari materia* with

The Court agrees with Plaintiff that a jury must resolve Plaintiff's failure to accommodate and retaliation claims. Defendant's argument that an employee must affirmatively make an accommodation request before the employer is required to provide it, and Plaintiff failed to do so here – is unavailing, for three reasons: (1) Plaintiff was suspended from employment at the same time she expressed her need for rest breaks caused by her pregnancy; (2) an employee does not need to use specific language to request accommodations;[6] and (3) the case law on

---

other statutory sections, including those evidencing legislative findings. As we have noted *supra*, when the New Jersey legislature amended the NJLAD to add pregnancy as a protected status it recognized that the common side effects of pregnancy include "bathroom breaks, breaks for increased water intake, periodic rest," etc., and that those symptoms and common medical conditions have engendered unfair discrimination. Defendant's interpretation of the statute would require every pregnant woman, whether hale and hearty or not, to anticipate all symptoms that might impact her work, no matter how temporary or ultimately tolerable, consult a doctor while asymptomatic, and preemptively seek accommodations before those common side effects manifest themselves at work – or risk, as in this case, being fired for sitting down and resting the first time she felt fatigued or unstable on her feet. This absurd Catch-22 would bar failure to accommodate claims in any case the employer moves swiftly to take an adverse employment action as soon as pregnancy symptoms occur. Such a rule would frustrate the expressed legislative intent, defeat the Act's remedial purpose, and render the obligation to engage in an interactive process a nullity. Accordingly, the Court finds that Defendant's argument is more appropriately directed to the type of accommodations an employer must provide and when, rather than whether the employer is required to engage in the interactive process and provide some accommodations in the first place.

[6] See Tynan v. Vicinage 13 of Superior Court, 798 A.2d 648, 656–57 (N.J. Super. Ct. App. Div. 2002) (citing Jones v. United

17

failure to accommodate requires the employer in certain situations to engage in the interactive process even after an employee is terminated.[7] Moreover, the employer must engage in the interactive process in good faith,[8] and also prove that it would be a hardship to provide a particular accommodation to its pregnant employee.[9]

---

Parcel Service, 214 F.3d 402, 408 (3d Cir. 2000)) (other citations omitted) ("It is not necessary that requests for reasonable accommodations be in writing or even use the phrase 'reasonable accommodation,' and there are no magic words to seek an accommodation," but the employee "must make clear that . . . assistance [is desired] for his or her disability.").

[7] See Linton v. L'Oreal USA, 2009 WL 838766, at *8 (D.N.J. 2009) (noting that an employee's request for accommodation that comes shortly after termination requires the employer to engage in the interactive process) (citing Bultemeyer v. Fort Wayne Community Schools, 100 F.3d 1281, 1287 (7th Cir. 1996) (finding that the employer improperly failed to engage in the interactive process when the plaintiff submitted his request for accommodation just hours after his termination, and observing, "[I]t appears to us that FWCS was tired of having to accommodate Mr. Bultemeyer's disability, and when it had the opportunity, it got rid of him. FWCS fired Bultemeyer as soon as it could, and when he presented a request for reasonable accommodation, FWCS ignored it, saying that it came too late.")).

[8] Taylor v. Phoenixville School Dist., 184 F.3d 296, 317 (3d Cir. 1999) ("All the interactive process requires is that employers make a good-faith effort to seek accommodations.").

[9] See, e.g., Turner v. Hershey Chocolate U.S., 440 F.3d 604, 614 (3d Cir. 2006) (explaining that once an employee makes out her prima facie case that she can perform her job with certain accommodations, the burden shifts to the employer to prove, as an affirmative defense, that the accommodations requested by the employee are unreasonable, or would cause an undue hardship on the employer).

Because Plaintiff's suspension and direction to go home was concomitant with her claim that she asked for the need to rest due to pregnancy-related nausea and fatigue, Plaintiff cannot be faulted, when viewing the evidence in Plaintiff's favor, for not making earlier, more specific, or additional accommodation requests.  The fact that Plaintiff informed Wall and Wisdom she was pregnant, and that her pregnancy was the reason she needed breaks to rest, also triggered Defendant's duty to engage in the interactive process during the 11-day period before Plaintiff's termination.

In short, numerous material facts, those that are both unrefuted and disputed, when viewed in the light most favorable to Plaintiff and if believed by a jury, show that Plaintiff was terminated when she revealed her pregnancy and Defendant did not provide, or offer to provide, Plaintiff with any accommodations for her pregnancy.  A jury must make the final assessment of whether Plaintiff was fired for violating work rule A-4 or fired for being pregnant in violation of the NJLAD.

## CONCLUSION

For the forgoing reasons, Defendant's motion for summary judgment must be denied.  An appropriate Order will be entered.


Date: December 18, 2017           s/ Noel L. Hillman
At Camden, New Jersey           NOEL L. HILLMAN, U.S.D.J.